IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Jacob Rader,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **1:21cv1017 (LMB/WEF)** |
| | ) | |
| **Mack Bailey, Warden,** | ) | |
| **Respondent.[1]** | ) | |

## MEMORANDUM OPINION

Jacob Rader ("Petitioner" or "Rader"), a Virginia inmate proceeding pro se, has filed a

petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the

constitutionality of his December 6, 2019 convictions in the Circuit Court of Chesterfield

County, Virginia for one count of making a threat in writing and two counts of felony failure to

appear.[2] The Court dismissed respondent's original motion to dismiss [Dkt. No. 30] on April 14,

2023, without prejudice, because the respondent had not filed all of the portions of the record as

required by Rule 5 of the Rules Governing Section 2254 Cases in the United States District

Courts. [Dkt. No. 37]. On May 9, 2023, the respondent filed a Rule 5 Answer and a Motion to

Dismiss that complied with Rule 5, with supporting briefs and exhibits. [Dkt. Nos. 38, 39].[3] For

---

[1] Rader originally named the Commonwealth of Virginia as the respondent in this matter. In his amended petitions, he has correctly named Mack Bailey, Warden, as the respondent. [Dkt. No. 5] at 2; [Dkt. No. 26] at 1. Bailey, therefore, will be substituted as the proper respondent.

[2] Rader was released from custody by the Virginia Department of Corrections on October 17, 2022 and resides in California. [Dkt. No. 29].

[3] Rader was advised of the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), in accordance with Local Rule 7(K). On May 24, 2023, Rader filed a "Response" alleging that he had never received the original motion to dismiss or respondent's renewed motion. [Dkt. No. 41] at 1.

Rader's assertion is inconsistent with other statements he has made. On November 28, 2022, Rader filed a motion for an extension of time [Dkt. No. 34] to respond to the original motion to dismiss, in which he stated that he had received the motion on November 16, 2022, and in his

the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition dismissed with prejudice.

## I. Procedural History

An arrest warrant was issued by the Chesterfield County General District Court on May 25, 2016, charging Rader with making a threat in writing, in violation of Virginia Code § 18.2–60. He was arrested on August 8, 2017, and counsel was appointed on August 10, 2017. (CCT at 2–3, 18).[4] On August 18, 2017, the prosecutor filed a discovery response and delivered a copy to Rader's counsel, Matthew T. Mikula. The discovery included the following documents: "Tennissen 437" report; "Det. J.P. Hylton–936" report, which included the text of an email Rader had sent to Detective Hylton. (Id. at 9–13). Rader waived his preliminary hearing and was released on bond on September 11, 2017. (Id. at 2–3, 4–6). On November 20, 2017, a Chesterfield County grand jury returned an indictment charging Rader with making a threat in writing, in violation of Virginia Code § 18.2–60. (Id. at 26).

The circuit court issued a capias for Rader because he failed to appear in circuit court on February 1, 2018 and again on February 23, 2018. The capias was executed on May 7, 2019. (Id.

_____

motion he referred to Document 32 (respondent's brief in support of his motion to dismiss). Id. at ¶ 3. On December 12, 2022, Rader filed his opposition to the original motion to dismiss and referenced Document 32 throughout his 62–page response. [Dkt. No. 36] at 1, 5, 10, 14, 17, 23, 28, 31, 34–36, 47, 55, 57, 59. Moreover, in his May 24, 2023 response, Rader admits that he received transcripts and other documents on May 9, 2023, which were filed as exhibits to the respondent's brief in support of respondent's May 9, 2023 motion to dismiss. His allegation is rendered moot because the respondent refiled his May 9, 2023 pleadings and exhibits on May 30, 2023. [Dkt. Nos. 42, 42–1 through 42–8]. Finally, in an abundance of caution, respondent included a second Roseboro notice. [Dkt. No. 42-8]. In addition, the Court also entered a Roseboro notice on May 10, 2023. [Dkt. No. 40].

Petitioner has not filed a further response, and the time to file a response has long passed. Even though he has not filed any further response, the Court will consider his December 12, 2022 response in opposition to the initial Rule 5 Answer and Motion to Dismiss in deciding the pending motion to dismiss. [Dkt. Nos. 36, 36–1].

[4] "CCT at ___" denotes a references to the state circuit court manuscript record.

at 49). On June 7, 2019, Rader sought and was granted leave by the circuit court to proceed <u>pro se</u>, and his former counsel, Mikula, was designated as stand–by counsel. (<u>Id.</u> at 72–72). The grand jury returned additional indictments against Rader on July 15, 2019 for two counts of failing to appear on a felony charge in violation of Virginia Code § 19.2–128. (<u>Id.</u> at 94–95). At a pretrial hearing on August 8, 2019, Rader confirmed that the Commonwealth had provided additional discovery to him. (<u>Id.</u> at 126–77); [Dkt. No. 39–6] at 35. Rader went to trial on all three charges and on August 26, 2019, the jury found Rader guilty of all three indictments. <u>Commonwealth v. Rader</u>, Case Nos. CR17F02548–01, CR19F01544–01, and –02; (CCT at 210–12).

At his sentencing on November 26, 2019, the court heard Rader's motion to set aside his convictions, in which he argued that: 1) the evidence was not sufficient to support his conviction for making a threat in writing because the prosecution had not produced the original text messages; 2) the copies of the text messages were not "the best evidence;" 3) there was no evidence upon which the jury could find that Rader had made a "threat;" and 4) the prosecutor failed to provide Rader with exculpatory evidence. [Dkt. No. 39–1] at 22–50; (CCT at 229–34). The court denied the motion on November 26, 2019. That ruling is reflected in the December 6, 2019 judgment order. (<u>Id.</u> at 241).

After denying the motion to set aside, the court sentenced Rader to five years in prison for making a threat in writing; one year in prison for his failure to appear on February 1, 2018; and two years in prison for his failure to appear on February 23, 2018. All of his sentences were run concurrently and Mikula was appointed to represent Rader on appeal. (<u>Id.</u> at 241–43). The court also appointed John I. Jones, IV, as co–counsel for Rader's appeal. (<u>Id.</u> at 253).

Appellate counsel (Jones) filed a petition for appeal in the Court of Appeals of Virginia that assigned one error—that the evidence was insufficient to sustain Rader's conviction for making a threat in writing. <u>Rader v. Commonwealth</u>, Record No. 2067–19–2; [Dkt. No. 39–10].

3

A judge of the court denied the petition for appeal by an order dated June 17, 2020. [Dkt. No. 39–9]. Counsel sought review by a three–judge panel, which adopted the reasoning of the June 17, 2020 order and denied the petition for appeal on October 28, 2020. [Dkt. No. 39–8]. Jones timely filed a petition for appeal in the Supreme Court of Virginia alleging the same error (sufficiency of the evidence), which was refused on July 14, 2021. Rader v. Commonwealth, Record No. 201445; [Dkt. Nos. 39–11, 39–13].

On June 18, 2020, while his direct appeal was pending in the Supreme Court of Virginia, Rader, proceeding pro se, filed a petition for a writ of habeas corpus in the Supreme Court of Virginia ("habeas court"), asserting the following three claims:

> I. "Petitioner was deprived his confrontational right to confront witnesses critical to defense." (Hab. at 167).[5]
>
> II. "Petitioner was deprived to [sic] Due Process, Brady[6] and Giglio."[7] (Hab. at 173).
>
> III. "Prosecutorial Misconduct." (Hab. at 186).

On June 25, 2021, in the order dismissing the petition, the habeas court summarized the evidence supporting Rader's conviction for making a threat in writing as follows:

> Petitioner was terminated from his employment by his boss, Bowman, on May 2, 2016. Bowman received threatening text messages around May 23, 2016, that he recognized as being sent from petitioner's phone number. The messages indicated that petitioner was angry and stated, "I'm gonna finish this;' and "Ur never going to see me coming." Petitioner also told Bowman his "days are numbered," and referenced "burn[ing] it down." On May 24, Bowman took screen shots of the text messages and made a report to Tennyson. Other messages were sent to Bowman's wife and stated petitioner's belief that he was fired for "money/divorce." Petitioner refers to an alleged affair and alludes to an impending divorce between Bowman and his wife. The messages go on to contend Bowman's daughter would suffer in the future in ways that petitioner described using significant vulgarity.
>
> At the advice of Tennyson, Bowman texted petitioner and asked him to refrain from contacting him, his wife, staff, or clients again. Following this message, petitioner

---

[5] "Hab. at ___" denotes a reference to the habeas record.

[6] Brady v. Maryland, 373 U.S. 83 (1963).

[7] Giglio v. United States, 405 U.S. 150 (1972).

escalated by sending Bowman texts implying he would have his nephew sexually assault Bowman's daughter. He sent more messages using vulgar and racist language, stating the business will "burn," and attached a picture of a penis. Thereafter, Bowman went to a magistrate to request that a warrant issue against petitioner and sought a protective order because he perceived the messages to be threatening. Detective Hylton reviewed the criminal complaint filed by Bowman and investigated the messages. During Hylton's investigation he exchanged emails and had at least one phone call with petitioner in which petitioner admitted to sending messages to Bowman but assured the officer that he would no longer communicate with Bowman and was moving out of state. Petitioner was eventually apprehended and represented himself with the assistance of stand–by counsel.

(Hab. at 935). In its June 25, 2021 order the Supreme Court of Virginia found that Claims I and III were barred by a state procedural rule, Slayton v. Parrigan, 29, 205 S.E.2d 680, 682 (Va. 1974) (Hab. at 934, 938). The dismissal order identified the following individual issues encompassed in Claim II and determined they were either without merit or defaulted.[8]

1)  The portion of Claim II that alleged the Commonwealth had violated Brady by not producing the Tennissen report was without merit because "petitioner was aware at the time of trial of the substantive information contained in the summary." (Hab. at 934).

2)  The portion of Claim II that alleged the Commonwealth had violated Brady and Giglio by not providing Rader with a copy of the arrest warrant was defaulted pursuant to Slayton v. Parrigan because it was admitted as Commonwealth's Ex. 2 at trial, was available to Rader at trial, and he could have raised an objection at trial and pursued it on appeal. (Id. at 936).

3)  The portion of Claim II that alleged the Commonwealth had violated Brady and Giglio by not providing Rader with a copy of Hylton's "synopsis," was without merit because Rader had been provided with a copy of his email with Hylton "as part of pre–trial discovery," and that Rader had "failed to demonstrate how inculpatory evidence results in affirmative evidence that is either exculpatory or material." (Id. at 937).

4)  The portion of Claim II that alleged the Commonwealth had violated Brady and Giglio by not providing Rader with "screen shots" was without merit because the screen shots were provided in the discovery provided to him. (Id.).

5)  The portion of Claim II that alleged the Commonwealth had violated Brady and Giglio by not providing Rader with a copy of a "ping warrant," was defaulted pursuant to Slayton v. Parrigan because the warrant was available to Rader at trial and therefore he could have raised an objection at trial and pursued it on appeal.

---

[8] Rader v. Miller, Record No. 200858, cert. denied, 142 S. Ct. 875 (2022).

(Id. at 938).

6) The portion of Claim II that alleged the Commonwealth had violated Brady and Giglio by not obtaining a certified copy of the text messages from Verizon Wireless was defaulted pursuant to Slayton v. Parrigan because Rader was aware at the time of trial that the Commonwealth had not obtained a certified copy of the text messages and cross-examined Hylton on this issue. Rader therefore he could have raised an objection at trial and pursued it on appeal. (Id.).

### III. Federal Petition

On August 26, 2021, Rader, proceeding pro se, timely filed the pending federal petition for a writ of habeas corpus. On September 9, 2021, the Court ordered him to amend and refile his petition using the standardized habeas form to comply with Local Civil Rule 83.4, and to pay the required fee or request to proceed in forma pauperis. [Dkt. No. 3]. On October 4, 2021, he refiled his habeas petition using the standard habeas form and paid the filing fee. [Dkt. No. 5]. The respondent moved to dismiss the petition [Dkt. No. 12 at 4–6], and on August 10, 2022 the Court granted the motion, dismissed the petition without prejudice, and directed Rader to submit his amended petition within thirty days. [Dkt. No. 20]. Rader complied. [Dkt. No. 26]. The claims in the amended petition are as follows:

1) The Commonwealth violated Rader's "Due Process" rights by "withholding " "material [exculpatory] evidence"—"Tennison's 437 Report." [Dkt. No. 26] at 5–12.[9]

2) The Commonwealth violated Rader's "Due Process" rights by "withholding " "material [exculpatory impeachment] evidence"—"Tennison's 437 Report." [Id.] at 13–16.

3) The Commonwealth violated Rader's "Due Process" rights by "withholding " "material [exculpatory impeachment] evidence"—"Commonwealth' Exhibit # 1," screenshots of the relevant text messages. [Id.] at 16–24.

4) The Commonwealth violated Rader's "Due Process" rights by "withholding " "material [exculpatory] evidence"—"Commonwealth' Exhibit # 1," screenshots of the relevant text messages. [Id.] at 25–37.

5) Petitioner's Confrontation Clause rights were violated because he "was denied the

---

[9] In the report, the detective's name is spelled "Tennissen," but the state appellate courts spelled his name "Tennyson." The Court will use the spelling on the report, "Tennissen."

6

right to confront Tennison" at trial. [Id.] at 37–41.

6) Petitioner's Confrontation Clause rights were violated because he "was denied [the] right to confront a custodian of records/official transcripts/Verizon wireless." [Id.] at 42–47.

7) The Commonwealth violated Rader's "Due Process" rights by "withholding " Impeachment evidence "Notes/'Synopsis' by Detective Hylton." [Id.] at 48–52.

8) The Commonwealth violated Rader's "Due Process" rights by the prosecutor's "manufacturing evidence" and intimidating petitioner's appellate attorney. [Id.] at 53–57.

9) The Commonwealth violated Rader's "Due Process" rights because the prosecutor "had possession of the 'Tennison 437 Report' and knew that Edgar Bowman's statement never accused petitioner of sending him threatening messages." [Id.] at 58–60.

10) The Commonwealth violated Rader's "Due Process" rights because of "perjury by Detective Hylton." [Id.] at 61–66.

11) Petitioner's Confrontation Clause rights were violated because the trial court refused to allow petitioner to "impeach Detective Hylton." [Id.] at 67–70.[10]

### IV. Exhaustion and Procedural Default

A federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court. Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). "To [exhaust his claims], the petitioner must have presented to the state court 'both the operative facts and the controlling legal principles.'" Kasi v. Angelone, 300 F.3d 487, 501–02 (4th Cir. 2002) (citation omitted). Further, exhausting the facts upon which a petitioner relies is an important aspect of exhaustion under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that

---

[10] In reviewing a federal habeas petition, a district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard . . . [and it is] the district court['s] duty to consider only the specific claims raised in a § 2254 petition." See Folkes v. Nelsen, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); Frey v. Schuetzle, 78 F.3d 359, 360–61 (8th Cir. 1996) (district courts adjudicate only those claims upon which the petitioner seeks relief and do not decide claims upon which the petitioner never intended to seek relief).

adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). The petitioner has the burden to demonstrate he has exhausted his claims. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).

"[A] procedural default occurs when the petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Burket v. Angelone, 208 F.3d 172, 183 (4th Cir. 2000) (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1, (1991)). "Since the procedural bar that gives rise to exhaustion is an independent and adequate state ground, . . . [the] claims raised . . . must be treated as simultaneously exhausted and procedurally barred from federal habeas review." Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (citing Baker, 220 F.3d at 288). If a state procedural rule "is both adequate and independent, it will bar consideration of the merits of claims on habeas review unless the petitioner demonstrates cause for the default and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice." McNeill v. Polk, 476 F.3d 206, 211 (4th Cir. 2007) (citing Coleman, 501 U.S. at 750). A state procedural rule is "adequate" to bar federal review of a claim if the rule is firmly established and regularly or consistently applied by the state courts; and it is "independent" if it does not depend on a federal constitutional ruling. Yeatts v. Angelone, 166 F.3d 255, 263–64 (1998). Here, if Rader returned to state court to raise his unexhausted claims, they would be deemed barred by the state statute of limitations, Virginia Code § 8.01–654(A)(2), and/or deemed successive under Virginia Code § 8.01–654(B)(2).[11]

---

[11] Virginia Code § 8.01–654(A)(2) is an adequate and independent bar that precludes federal review of a claim. See Sparrow, 439 F. Supp. 2d at 588; see, e.g., Baker v. Clarke, 95 F. Supp. 3d 913, 917–18 (E.D. Va. 2015) ("many courts have held, Virginia Code § 8.01–654(A)(2) constitutes an adequate and independent state–law procedural rule, as it is a statutory rule that is not tied to the federal Constitution.") (citation omitted). The same is true for a claim barred as

A federal court may review a defaulted claim only if the petitioner demonstrates either "cause for the default and actual prejudice as a result of the alleged violation of federal law" or a fundamental miscarriage of justice. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2005). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman, 501 U.S. at 753–54. To show "prejudice," a petitioner must show that an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis removed). A court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

Respondent concedes that Petitioner's Grounds 1, 3, portions of Ground 4, 6, and 7 are exhausted because Rader raised them in his state habeas petition, but asserts that his remaining claims are unexhausted. Rader admits in his petition that all of his claims, with the exception of Claim 1, are defaulted, essentially blaming his appellate counsel who he claims "can answer the question why he only chose to appeal based on insufficient evidence." [Dkt. No. 26 at 12]. In his amended petition, Rader argues more directly that the default of claims 2–11 was the fault of his appellate counsel. [Dkt. No. 26 at 13, 24, 25, 37, 42, 48, 53, 58, 61, 67].

*A. Cause*

Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit," Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008), and appellate counsel can only be deemed ineffective if counsel "'ignored issues [that] are clearly

---

successive under Virginia Code § 8.01–654(B)(2), see Mackall, 131 F.3d at 446 (finding the bar on successive habeas applications in Code § 8.01–654(B)(2) to be a well–recognized adequate and independent ground that bars federal review). It would also be barred by Slayton v. Parrigan. Mu'Min v. Pruett, 125 F.3d 192, 196–97 (4th Cir. 1997).

stronger than those presented.'" Smith v. Robbins, 528 U.S. 259, 288 (2000) (citation omitted).

"[T]he hallmark of effective appellate advocacy" is the "winnowing out [of] weaker arguments

on appeal and focusing on those more likely to prevail." Smith v. Murray, 477 U.S. 527, 536

(1986) (internal quotation marks and citation omitted); Jones v. Barnes, 463 U.S. 745, 752

(1983) ("there can hardly be any question about the importance of having the appellate advocate

examine the record with a view to selecting the most promising issues for review."). "Under

Strickland, . . . appellate counsel [is] entitled to a presumption that he decided which issues were

most likely to afford relief on appeal and [a habeas petitioner] must demonstrate that counsel's

decision not to pursue the [a] claim 'fell below an objective standard of reasonableness' in light

of the prevailing professional norms." Bell v. Jarvis, 236 F.3d 149, 175 (4th Cir. 2000) (quoting

Strickland v. Washington, 466 U.S. 668, 688 (1984)). Further, although ineffective assistance of

counsel may be sufficient to establish "cause" to excuse a default, see Edwards v. Carpenter, 529

U.S. 446, 451 (2000); Slavek v. Hinkle, 359 F. Supp. 2d 473, 480 (E.D. Va. 2005),

> where a petitioner for federal habeas relief seeks review of claims defaulted
> during state habeas proceedings, he must show that he raised the ineffectiveness
> argument as a cause for the defaulted substantive claims during his state habeas
> proceedings. If a petitioner did not raise the ineffectiveness claim at the state
> habeas level, a federal habeas court may not consider it. Edwards, 529 U.S. at
> 452–53.

Powell v. Kelly, 531 F. Supp. 2d 695, 723 (E.D. Va. 2008), aff'd, 562 F.3d 656 (4th Cir. 2009).

Rader failed to raise any claims of ineffective appellate counsel in his state habeas petition, and

therefore cannot raise the issue as cause to excuse his default as to these claims.

    In his response to the respondent's Motion to Dismiss, Rader includes a May 12, 2020

letter from his appellate counsel (Jones) that indicates that Jones had enclosed a copy of the

prosecutor's brief opposing Rader's petition for appeal. [Dkt. No. 36–1] at 18. In that letter,

Jones informed the prosecutor that he had not "raise[d] anything about discovery in the Petition,

10

and that [he] didn't intend to raise anything on appeal that wasn't argued in the Petition." [Id.].

Jones's May 12, 2020 letter and the enclosed brief clearly put Rader on notice before he filed his

state habeas petition pro se on June 18, 2020 that appellate counsel had not raised any assertion

of error about discovery in the petition for appeal and that the only assertion of error Jones had

raised on appeal was that the evidence was insufficient to sustain the conviction for making a

threat in writing.[12] Despite making multiple arguments about what he and Jones discussed, Rader

misses the point of what is necessary to demonstrate cause, which is that he had to raise the

ineffective assistance of appellate counsel claim in his state habeas proceeding.

> Under Virginia law, Rader had the opportunity to amend his habeas petition.
>
> While a state habeas petition is pending before the Virginia Supreme Court, "leave to amend shall be liberally granted in furtherance of the ends of justice." Rule 1:8 of the Rules of the Virginia Supreme Court. The Virginia Supreme Court has interpreted this rule to allow amendment unless the nonmovant would be prejudiced by the amendment. Kole v. City Of Chesapeake, 247 Va. 51, 439 S.E. 2d 405, 409, 10 Va. Law Rep. 722 (Va. 1994). Moreover, unless a petitioner seeks leave to amend his state habeas petition, the court is without jurisdiction to entertain any additional claims in a new state habeas petition. See Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994) (applying Virginia law).

Hedrick v. True, 443 F.3d 342, 364 (4th Cir. 2006). Rader's allegations of ineffective assistance

of appellate counsel are defaulted, and do not establish cause to excuse his defaults.[13] See, e.g.,

---

[12] An example of a claim Rader raised in his state habeas that was correctly "winnowed out" by counsel was raised in Rader's post–trial motion, in which he alleged that the trial court erred in admitting the copies of the texts in lieu of the original text messages because Detective Hylton had not subpoenaed the original text messages from Verizon. [Dkt. No. 39–1] 27–29, 48. In denying the claim, the trial court found that even if Rader had not waived the objection by failing to raise it in a timely and specific manner at trial, the objection had no merit. [Id.] at 29.

[13] Martinez v. Ryan, 566 U.S. 1 (2012), recognized an exception to the default doctrine for a "substantial" ineffective assistance claim in connection with an initial–review collateral proceeding addressing claims of trial counsel error. See Atkins v. Holloway, 792 F.3d 654, 661 (6th Cir. 2015) (citations omitted). Martinez is inapplicable to claims of ineffective assistance of appellate counsel, Davila v. Davis, 582 U.S. 521, 529 (2017) (declining to extend the Martinez exception to defaulted claims of ineffective assistance of appellate counsel), and does not provide cause to review a defaulted claim. See Moseley v. Clarke, 3:19cv40, 2019 U.S. Dist.

Tippens v. Virginia, No. 3:13cv757, 2015 U.S. Dist. LEXIS 89385 (E.D. Va. July 9, 2015), *9–10, 12–13 (appellate counsel was not ineffective for choosing "to pursue the preserved challenge to the sufficiency of the evidence" on appeal and not to pursue alleged errors by the trial court that counsel did not raise at trial that were barred from review under the state's contemporaneous objection rule), appeal dismissed, 631 F. App'x 151 (4th Cir. 2016).

The record does not establish any external cause for Rader's defaults. To the extent Rader claims "ignorance," neither his "pro se status nor his ignorance of Virginia law constitutes cause sufficient to excuse his default." Wilson v. Lee, No. 3:02cv551, 2003 U.S. Dist. LEXIS 29320, *4 (E.D. Va. Apr. 4, 2003) (citations omitted); see also United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (pro se petitioner's ignorance and misconceptions about the statute of limitations do not justify equitable tolling because they are not extraordinary circumstances beyond his control).

Rader also argues that he was denied access to his prison's law library beginning on March 20, 2020 and that it would be a miscarriage of justice to find he did not exhaust a claim because of that lack of access. (Dkt. No. 36 at 6–9). Library restrictions in March of 2020 had nothing to do with Rader's failure to raise and properly preserve errors during his trial in August 2019. Indeed, Rader not only had the assistance of appointed stand-by counsel throughout the trial proceedings, he also informed the trial court that he had been to the jail's law library one hour each week while he was in custody. [Dkt. No. 39–4] at 12. On this record, Rader's argument about lack of access is meritless. Likewise, his claim that he relied on information

LEXIS 152405, *33 n.6 (E.D. Va. Sept. 5, 2019) ("To the extent that Moseley faults appellate counsel for the default of his claim, the explicit language of Martinez applies to an inmate's default of a claim of ineffective assistance of trial counsel only .... Thus, the ineffective assistance of appellate counsel fails to serve as the cause for the default of this claim") (citation omitted), appeal dismissed, 791 F. App'x 428 (4th Cir.), cert. denied, 141 S. Ct. 301 (2020).

provided by an inmate fails because "[a] prisoner's reliance on the erroneous advice of an inmate law clerk fails to establish extraordinary circumstances necessary to excuse the untimely filing of a § 2254 petition." Pauley v. Clarke, No. 1:13cv7142013 U.S. Dist. LEXIS 195036, *6 (E.D. Va. Nov. 8, 2013) (citing Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); Whiddon v. Dugger, 894 F.2d 1266, 1267 (11th Cir. 1990)), appeal dismissed, 585 F. App'x 68 (4th Cir. 2014). Finally, Rader's conclusory assertion of cause based on the closure of the law library does not establish cause to excuse his default. See Michau v. Charleston Cnty., 434 F.3d 725, 728 (4th Cir. 2006) (finding sua sponte dismissal appropriate where the plaintiff did not explain how he was injured by any limitations on his access to a law library).[14]

Although Rader may not have been able to go in person to the law library after March 20, 2020, he was permitted to submit requests; and if he submitted documentation that he had a court date he could be given a higher priority. [Dkt. No. 36–1] at 1. In addition, Rader's state court pleadings establish that he had sufficient access to legal materials as he listed 34 cases in the "Cases" portion of his state habeas petition (dated May 21, 2020) [Dkt. No. 1–3]. He also cited

---

[14] Michau was a civil rights action that asserted a denial of access to a law library. The reasoning of the Fourth Circuit is applicable to Rader's similar conclusory claim.

> Michau's denial-of-access claims also fail, because his complaints do not specifically explain how he was injured by any limitations on his access to the law library. See Lewis v. Casey, 518 U.S. 343, 351 (1996) (explaining that for plaintiff to state a claim for denial of access to courts, it is not enough to show that the "prison's law library or legal assistance program is subpar in some theoretical sense"; a plaintiff must demonstrate actual injury by "demonstrating that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim"); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc) ("The district court also properly dismissed Cochran's claim that prison officials infringed his right of access to the courts. In making such a claim, a prisoner cannot rely on conclusory allegations. Specificity is necessary so that prison officials are not required to file unnecessary responses to speculative allegations." (citation omitted)).

Michau, 434 F.3d at 728.

an additional six cases in his December 15, 2020 "Motion to Grant Relief." (Hab. at 845-54).[15]

Lastly, the trial judge's thorough colloquy with Rader pointed out the very perils of self–representation that Rader has brought upon himself. [Dkt. No. 38-4] at 6–17. Specifically, the trial court warned Rader that defenses might arise during the trial that a lawyer would recognize, but if not raised by Rader would be deemed waived and he would not "be able to bring them up for the first time on appeal." [Id.] at 14. The court also explained that there might be "objections to the prosecutor's evidence that a lawyer would recognize immediately and if Rader did not "make those objections timely, they're deemed waived." [Id.] at 15. After warning Rader that proceeding pro se was not "a good idea," the trial judge took the added precaution of appointing Mikula as stand–by counsel. [Id.] at 15.[16] On this record, Rader's attempt to shift the blame for not raising specific issues to his appellate counsel has no merit, given that Rader's pro se status resulted in how the trial record was developed.

    *B. Tennissen 437 Report, Det. J.P. Hylton–936" Report, Screen Shots*

Rader repeatedly alleges that he was not provided with critical discovery, specifically the "Tennissen 437" report, the "Det. J.P. Hylton–936"report, and the screen shots of the alleged

---

[15] On August 26, 2021, about two months after the Supreme Court had refused his petition for appeal on direct appeal, Rader filed a motion noting that the Supreme Court of Virginia had found "five issues" that Rader had raised in his habeas that could have "been raised on direct appeal." (Hab. at 24). Rader's motion cited five cases in that motion. (Hab. at 24, 39, 40). Rader's motion also neglected to include the portion of the ruling on those issues that found the claims were barred because the issues "could have been raised at trial and on appeal." (Hab. at 934–38).

[16] The default of the claims occurred at trial, which was before Jones was appointed to represent Rader. In short, the damage was done. Without a contemporaneous objection at trial, raising the issue on appeal would have been futile. See Jones v. Catoe, 9 F. App'x 245, 254 (4th Cir. 2001) ("At a minimum, appellate counsel cannot be found ineffective for failing to raise issues as to which there is no reasonable likelihood of success."); United States v. Terry, 366 F.3d 312, 318 (4th Cir. 2004) (in context of trial counsel, recognizing that a weak argument may not only be unsuccessful but also could detract from stronger arguments).

14

threatening messages.[17] These allegations are contradicted by the record, which establishes that the reports were provided to the defense well before trial and that Rader was expressly aware of the screen shots before trial. Rader argues that the prosecutor violated his rights by not giving the reports to him in August 2019, ignoring that each report was disclosed to and provide to his attorney, Mikula, on August 18, 2017—nearly two years before trial. (CCT at 9–13). Rader's argument that the prosecutor had to provide discovery directly to Rader is contrary to both Brady and Giglio, which only require disclosure to the defense.[18]

In addition, Rader admitted at trial that the prosecutor provided him with the video/audio tape of his August 9, 2017 interview with Detective Hylton. [Dkt. No. 39-18] at 59).[19] Although the video was not admitted at trial, it is part of the record and establishes that Rader was advised of, and acknowledged that he understood, his Miranda rights. (12:39:50 to 12:41:20). Thereafter, the video shows that Rader reviewed the text messages (screen shots) with the detectives (1:36:50 to 1: 39:00); admitted that he had sent them; and stated the text messages were not something he "was proud of." (1:38:38 to 1:38:43). Rader actually called Detective Hylton as a trial witness and Hylton testified that he went over the text messages with Rader (Comm. Ex. 1,

---

[17] Rader references the reports in Claims 1, 2, 4, 5, 7, and 9.

[18] A prosecutor must disclose information favorable to the defense, but disclosure need not precede trial. Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Agurs, 427 U.S. 97, 107–12 (1976); see United States v. Bagley, 473 U.S. 667, 674 (1985) (holding that Brady "requires disclosure only of evidence that is both favorable and 'material either to guilt or to punishment.'"). "Brady thus is a disclosure rule, not a discovery rule. Disclosure even in mid-trial suffices if time remains for the defendant to make effective use of the exculpatory material." United States v. Gray, 648 F.3d 562, 567 (7th Cir. 2011) (citation omitted); see United States v. Fisher, 711 F.3d 460, 471 (4th Cir. 2013) (recognizing that the Supreme Court "extended the Brady[]disclosure rule to material impeachment evidence") (citing Giglio, 405 U.S. at 154–55).

[19] Further, the prosecutor stated that she had "provided to the defendant through Mr. Mikula the items that [Rader] requested in his written motion for discovery, which included the audio and videotape of his interview with Detective Hilton," the June 2, 2916 email exchange, and the "visually transmitted text messages that are the subject of this trial." [Id.] at 31–32.

15

Screen Shots), that Rader admitted that "those were text messages that [he had] sent," and that Rader had stated that he was "remorseful" for having sent them. [Dkt. No. 39-18] at 194.

In denying Rader's post–trial motion, the circuit court found meritless Rader's claim that he had been denied exculpatory evidence. Rader argued that Tennissen's report indicated that Bowman had told Tennissen that he was simply "concerned" about the text messages and that Bowman had not told Tennissen that he had felt "threatened" by the text messages. Focusing upon the word "concerned" and the absence of the word "threatened" in Tennissen's notes, Rader argued that Bowman had never felt threatened and that therefore no crime had occurred.[20] Rader argued he had been prejudiced because the prosecutor had not given him the Tennissen report, but admitted that Tennissen's notes were provided to Mikula in 2017 and 2018. [Dkt. No. 39-18] at 36.[21]

After admitting that the reports about which he was complaining had been provided to defense counsel Mikula well before trial, Rader's argument evolved into a complaint that the prosecutor had not included materials in the discovery packet she provided directly to him before the August 8, 2019 hearing, after he had been granted leave to proceed pro se. [Id.] at 33–34, 35. When the circuit court questioned Rader about being denied exculpatory evidence that he admits had been provided to Mikula, Rader argued that it was not Mikula's "responsibility to give [Rader] discovery" [Id.]at 36, because the court had ordered the prosecutor "to send me every piece of discovery and that I was counsel. Whether or not shared in a packet that she had

_____

[20] The Tennissen 437 report states that Bowman told Tennissen that he had initially ignored Rader's texts but after receiving texts "on May 21 and May 23," Bowman became "concerned about" the texts and that was why he "report[ed]" them to the police. (CCT at 11).

[21] In responding to a question concerning his argument that the evidence was insufficient, Rader stated, "There's some exculpatory evidence that has come to light that was provided to Mr. Mikula prior to me ever becoming a pro se attorney." [Id.] at 34.

previously sent Mr. Mikula that she sent me, that's on her." [Id.] at 45–46.[22] Mikula informed the

trial court that the prosecutor had given him the officers' statements as part of its discovery

obligation before he was relieved as counsel, but he was not sure whether he had given that

material to Rader; however, he was sure that he had talked with Rader "about that" discovery

material. [Id.] at 43. The record establishes that the discovery material had been previously

provided to Mikula in 2017 and 2018, and that Rader's argument changed over time from not

being provided the materials, to the prosecutor having violated Rader's interpretation of a circuit

court order. [Id.] at 41–44. The court rejected Rader's argument finding that the information had

been given "to the defendant." [Id.] at 46.

Furthermore, the habeas court found that based on his cross–examination of Bowman,

Rader was aware of the Tennissen report. At trial, Rader asked Bowman, "Is it not true that you

told Tennyson that you felt concerned about these text messages?" [Dkt. No. 39-18] at 133.

Indeed, Rader continuously pressed Bowman during cross–examination over his use of the word

"concerned." In finding no merit to this portion of Rader's claim, the state habeas court observed

that Rader's focus on the word "concerned" established that "not only was [he] aware that

Tennyson could have been called as a witness, but he was also aware that Bowman reported

being 'concerned' about the text messages to Tennyson and made use of this information at

trial." (Hab. at 935–36).

This record clearly does not support Rader's assertion that the alleged Brady material was

not disclosed to him. See Fullwood v. Lee, 290 F.3d 663, 686 (4th Cir. 2002) ("[I]nformation

_____

[22] The subsequent written order stated that Rader "told" the trial judge "that he had received all
of the discovery from the Commonwealth" and that the trial judge had also ordered "the
Commonwealth to produce copies of all of the discovery given to the defendant, for the Court's
file," and that the discovery provided by the Commonwealth was "attached to th[e] order." (CCT
at 176); [Dkt. No. 39–6] at 33, 35.

that is not merely available to the defendant but is actually known by the defendant ... fall[s] outside of the <u>Brady</u> rule."); <u>United States v. Wilson</u>, 901 F.2d 378, 381 (4th Cir. 1990) ("[W]here the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the <u>Brady</u> doctrine.").

 *B. Actual Innocence*

 In trying to avoid most of his claim being defaulted, Rader refers to "miscarriage of justice," in his response to the Motion to Dismiss. That reference alone does not satisfy the standard established in <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 392 (2013). A miscarriage of justice exception applies only in a "severely confined category" in which reliable new evidence shows that "it is more likely than not that 'no reasonable juror' would have convicted" the petitioner had the evidence been available at trial. <u>Id.</u> (citation omitted; emphasis added). Here, Rader has not pointed to any new evidence to establish his claim of actual innocence; instead, he relies upon matters that were known well before trial or, were available to him during his trial.

 Because Rader has failed to establish cause for his defaults, federal habeas corpus review of his defaulted claims is not available and these claims must be dismissed. <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996). "Absent cause and prejudice or a fundamental miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule." <u>Mackall v. Angelone</u>, 131 F.3d 442, 445 (4th Cir. 1997) (citing <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989)).

### V. Standard of Review for Exhausted Claims

 Under the AEDPA, "a federal court may not grant a state prisoner's habeas application

unless the relevant state–court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Knowles v. Mirzayance, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772–73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quotations and citation omitted); see Harrington v. Richter, 562 U.S. 86, 103 (2011) (state decision is unreasonable application of federal law only if the ruling is so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement"); Porter v. Zook, 898 F.3d 408, 443 (4th Cir. 2018) (the reasonableness of a state court decision is evaluated "'in light of the evidence presented in the State court proceeding.'") (citation omitted).

This "highly deferential standard ... demands that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (internal quotations and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515

F.3d 290, 299 (4th Cir. 2008); see Schriro, 550 U.S. at 473–74. Section 2254(d)(1), as amended by the AEDPA provides for a "backward–looking … examination of the state–court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time— i.e., the record before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011).

In Claim 1, Rader alleges that the "Tennissen 437" report was exculpatory and was withheld from him. [Dkt. No. 26 at 5]. This allegation has already been shown to be meritless. See supra at 15–18. In considering this claim, the state habeas court found that "even if petitioner did not have possession of the summary, the record, including the trial transcript, demonstrates petitioner was aware at the time of trial of the substantive information contained in the summary." (Hab. at 934).

> [T]o the extent petitioner appears to argue that the summary is exculpatory and material because it suggests Bowman sent the messages to himself, or received the messages from his wife, this claim is without merit. The record, including the trial transcript and email petitioner sent to Hylton, demonstrates petitioner admitted to sending messages to Bowman. Furthermore, after receiving the text messages, Bowman sought a warrant for petitioner's arrest and a protective order against petitioner based on the text messages. In light of the overwhelming evidence establishing petitioner sent the text messages, petitioner has failed to demonstrate how using the summary as impeachment evidence would have been favorable to petitioner or undermined the confidence in the outcome.

(Id. at 936). The habeas court's decision did not involve an unreasonable application of clearly established federal law and was not based on an unreasonable determination of facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, Claim 1 will be dismissed.

In Claim 2, Rader alleges that the prosecutor violated Brady by failing to turn over Tennissen's report, which he claims could have been used to impeach Bowman's testimony. [Dkt. No. 26 at 13]. Besides being defaulted, this claim has no merit because like Claim 1 it is predicated upon the allegation that the prosecution did not provide the report directly to Rader.

For the reasons explained in the discussion of "cause" and in Claim 1, this claim has no merit. See, supra at 15–18, 18–19. Accordingly, Claim 2 will be dismissed.

In Claims 3 and 4, Rader alleges that his due process right to exculpatory evidence was violated because he was not given, before trial or in the discovery response, a copy of the screenshots (the text messages) introduced into evidence as Commonwealth's Ex. No. 1, as well as the Tennissen report. [Dkt. No. 26 at 16, 25]. The habeas court rejected both claims finding them meritless.

> [P]etitioner contends the Commonwealth failed to produce unidentified "screen-shots," in violation of Brady and Giglio. Petitioner does not specify what the "screen shots" showed, but it appears the petitioner may be contending the Commonwealth failed to disclose the screen shots of the threatening text messages introduced at trial.
>
> The Court holds this portion of claim (2) is factually without merit. The record, including the discovery provided to petitioner and the trial transcript, demonstrates petitioner was provided the screen shots of the text messages before trial.

(Hab. at 937). As previously discussed, Rader admitted in his August 9, 2017 interview with Detective Hylton, during which he reviewed the screenshots with Hylton, that "those were text messages that [he had] sent," and stated that he was "remorseful" for having sent them. [Dkt. No. 39-18] at 194. Rader also told the trial court on August 8, 2019, that as far as he was concerned "the discovery issue was handled prior to today," to which the court responded "Okay. So at this point, there is no issue for us to discuss with regard to discovery." [Dkt. No. 39-6] at 35. Rader had seen the text messages in 2017 and was clearly aware of them.[23] Further, those screenshots were included in the discovery provided to him after he was allowed to proceed pro se. (CCT at

---

[23] The habeas court also referenced Rader's admission in a telephone conversation with Hylton that he had sent the text messages and was remorseful. Hylton's notes reflect that Rader was "sorry for the messages [he] sent to the BOWMAN'S. [He] kn[e]w [he] shouldn't have sent them," and that he would "delete BOWMAN'S contact information from [his] cell phone, so as to not send him future messages." (CCT at 13).

138–69). The habeas court's conclusion that Rader's claim of not being provided the screenshots had no merit did not involve an unreasonable application of clearly established federal law and was not based on an unreasonable determination of facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, Claims 3 and 4 will be dismissed.

Claim 5 alleges that Rader was denied his right to confront the witnesses against him because he was denied Tennissen's report, that he was "ignoran[t] of … Officer Tennissen's involvement in this case," and was therefore unable to call him "as a witness." [Dkt. No. 26 at 39]. This claim was not raised in state habeas and is, therefore, defaulted. Even if not defaulted, the claim has no merit because the record clearly establishes that Tennissen's involvement was disclosed in the initial discovery provided to the defense in August 2017. (CCT at 9–13). Accordingly, Claim 5 will be dismissed.

In Claim 6, Rader contends he was deprived of his right to confront witnesses against him, in violation of the Sixth Amendment, because the Commonwealth failed to subpoena "the Verizon Wireless" custodian of records to obtain a "certified" transcript of the alleged threatening text messages. [Dkt. No. 26] at 42. This claim was raised in state habeas as Claim I, and the habeas court found it was defaulted under the rule of Slayton v. Parrigan. (Hab. at 933–34). Because Rader has not established cause to excuse his default, Claim 6 will be dismissed.

In Claim 7, Rader alleges that the Commonwealth suppressed the discovery it provided to Rader's counsel in general district court in 2017, specifically Hylton's notes (which included the Tennissen report). [Dkt. No. 26 at 48]. The habeas court found Rader's claim had no merit.

> [P]etitioner contends the Commonwealth violated Brady and Giglio when it failed to produce Hylton's "synopsis" or notes... [which included] a typed summary of Hylton's interactions with petitioner. The summary included an email exchange between Hylton and petitioner, in which petitioner apologized to the detective for "any problems I have caused" and agreed to refrain from contacting Bowman. The notes state Hylton called petitioner after receiving the email and includes a

"synopsis" of their phone conversation in which petitioner admits he should not have sent "the messages" to Bowman. Petitioner declined to turn himself into the authorities, but assured Hylton that he would no longer contact Bowman. Petitioner asserts Hylton's notes were exculpatory because the notes and synopsis do not show a violation of Code § 18.2–60.

The Court holds [the claim] is without merit. The record, including the trial transcript and discovery provided to petitioner, demonstrates petitioner was provided the email between Hylton and himself as part of pre–trial discovery. Moreover, petitioner was a party to the email and the phone conversation summarized in the "synopsis." Therefore, the substance of those statements was known to the petitioner and cannot form the basis of a Brady violation. See [Commonwealth v.] Tuma, 285 Va. [629,] 635–36 [(2013)] (stating a purpose of the Brady rule is to assure that the defendant "will not be denied access to exculpatory . . . evidence known to the government but unknown to him."); see also Fullwood v. Lee, 290 F.3d 663, 686 (4th Cir. 2002) ("Certainly, . . . information that is not merely available to the defendant but is actually known by the defendant would fall outside of the Brady rule.").

Additionally, to the extent petitioner asserts the absence of information in the summary or synopsis was exculpatory, he has failed to demonstrate how a lack of inculpatory evidence results in affirmative evidence that is either exculpatory or material. Therefore, petitioner failed to demonstrate a Brady violation.

(Hab. at 936–37). The habeas court's decision that Rader's claim had no merit did not involve an

unreasonable application of clearly established federal law and was not based on an unreasonable

determination of facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly,

Claim 7 will be dismissed.

In Claims 8 and 9, Rader alleges prosecutorial misconduct. Specifically, he alleges the

prosecutor: 1) manufactured evidence (providing the text messages in Microsoft–Word Format),

which the prosecutor provided to Rader in discovery and by only introducing the screenshots

(Commonwealth's Ex. No. 1) at trial; and 2) prosecuted Rader for sending a threatening message

when the prosecutor knew that the Tennissen report established that Bowman did not state the

messages were threatening and then "failed to correct" Bowman's testimony and allowed him to

"commit perjury." [Dkt. No. 26 at 53, 58, 59]. The habeas court found Rader's prosecutorial

misconduct claims were barred by the rule of Slayton v. Parrigan.

23

> [P]etitioner's [claim that] the Commonwealth engaged in vindictive prosecution when the prosecutor pursued a conviction, even though she was aware that no crime had been committed and secured the conviction by purposefully withholding the above–mentioned evidence [and] … the Commonwealth's decision to pursue the charges in the absence of a certified text message document from Verizon and in light of the "other evidence" "epitomizes" conduct unbecoming a prosecutor, unprofessionalism, and a disregard for the court's discovery orders . . . . could have been raised during the direct appeal process and, thus, is not cognizable in a petition for a writ of habeas corpus.

(Hab. at 938) (citing Slayton, 215 Va. at 29). Because Rader has not established cause to excuse his default, Claims 8 and 9 will be dismissed.

In Claim 10, Rader alleges that because Hylton read the Tennissen report, and therefore "knew" that Bowman had not accused Rader of "sending him any text messages, threatening or otherwise" Hylton had committed perjury; and that Hylton failed to obtain "official" transcripts of the text messages from Verizon and instead accepted the screenshots Bowman emailed to him, which became Commonwealth's Ex. No. 1. [Dkt. No. 26 at 61–64]. Rader raised this claim during his post–conviction motion and he now pursues the same incongruent argument that the Tennissen report had used the word "concerned" and not the word "threatened," and therefore Bowman had never used the word "threatened" when speaking with Tennissen. The trial judge explained to Rader that the absence of the word "threatened" from the report did not establish that the threats never happened. Rader responded that he was denied the right to cross–examine Tennissen about his report and the trial court stated that was not true because the prosecutor had provided the reports to Mikula. Rader responded by arguing that the prosecutor had never given the reports to him [Dkt. No. 39-1] at 35–46.  As previously discussed, this argument fails and the trial court found it to be meritless in denying his motion for a new trial.

In dismissing Rader's state habeas claim that he had been denied Brady material because he had not been given the Tennissen report, the habeas court found that Rader was aware of the Tennissen report's use of the word "concerned," and he had in fact used that fact in his cross–

24

examination of Bowman—"not only was petitioner aware that Tennyson could have been called as a witness, but he was also aware that Bowman reported being 'concerned' about the text messages to Tennyson and [Rader] made use of this information at trial." (Hab. at 935). The habeas court also rejected the assertion that Bowman had manufactured the text messages stating that

> the trial transcript and email petitioner sent to Hylton, demonstrates petitioner admitted to sending text messages to Bowman. Furthermore, after receiving the text messages, Bowman sought a warrant for petitioner's arrest and a protective order against petitioner based on the text messages. In light of the overwhelming evidence establishing petitioner sent the text messages, petitioner has failed to demonstrate how using the summary as impeachment evidence would have been favorable to petitioner or undermined the confidence in the outcome.

(Id. at 936).

The habeas court also found that Rader had defaulted his claim that the prosecutor violated his Brady and Giglio rights by not obtaining a certified transcript of the text messages form Verizon. (Id. at 938) (citing Slayton v. Parrigan). To the extent Rader argues a claim based upon the alleged non–disclosure of the Tennissen report, the habeas court's decision that his claim had no merit, did not involve an unreasonable application of clearly established federal law and was not based on an unreasonable determination of facts in light of the evidence presented. 28 U.S.C. § 2254(d). To the extent Rader argues he was denied his rights because the prosecutor did not obtain a certified transcript of the text messages from Verizon, the claim is defaulted and Rader has not established cause to excuse his default. Accordingly, Claim 10 will be dismissed.

In Claim 11, Rader argues he was denied his right to confrontation because the trial court limited his right to cross–examine Hylton. This matter was not pursued on appeal and is thus defaulted. Because Rader has not established cause to excuse his default Claim 11 will be dismissed.

25

## VI. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 38] will be granted, and the petition will be dismissed by an order to be issued with this opinion.

Entered this 3rd day of November 2023.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

26